UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NINA ANN CONNERS,

                        Plaintiff,

v.                                                      6:16-CV-0943
                                                        (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OFFICE OF PETER HOBAICA, LLC                B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee St.
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.                 JAMES DESIR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

        This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 20, 21.)

        Currently before the Court, in this Social Security action filed by Nina Ann

Conners ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 14, 18.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1981. (T. 69.) She completed high school. (T. 224.) Generally, Plaintiff's alleged disability consists of bipolar disorder, post-traumatic stress disorder ("PTSD"), and anxiety. (T. 223.) Her alleged disability onset date is June 30, 2010. (T. 69.) Her date last insured is December 31, 2016. (T. ) Her past relevant work consists of cashier, housekeeper, prepper, and residential counselor. (T. 225.)

### B.    Procedural History

On March 12, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 81.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 5, 2014, and again on June 26, 2014, Plaintiff appeared before the ALJ, David J. Begley. (T. 29-36, 37-68.) On October 27, 2014, ALJ Begley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-28.) On May 25, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-24.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and Plaintiff had not engaged in substantial

gainful activity since June 30, 2010.  (T. 14.)  Second, the ALJ found that Plaintiff had

the severe impairments of depressive disorder, NOS; anxiety disorder, NOS; and

polysubstance abuse.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an

impairment that meets or medically equals one of the listed impairments located in 20

C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 15.)  Fourth, the ALJ found that Plaintiff

had the residual functional capacity ("RFC") to perform a full range of work at all

exertional levels, but with non-exertional limitations.  (T. 16.)  The ALJ determined

Plaintiff should avoid concentrated exposure to irritants such as fumes, odors, dusts,

gases, and poorly ventilated areas.  (*Id.*)  He determined Plaintiff should avoid

hazardous machinery, unprotected heights, and open flames.  (*Id.*)  He determined

Plaintiff could perform simple, routine, repetitive tasks; could work in a low stress

environment defined as having no fixed production quotas, no hazardous conditions,

requiring only occasional decision making, and only occasional changes in the work

setting.  (*Id.*)  The ALJ determined Plaintiff could tolerate occasional interaction with

coworkers and supervisors, and should have no direct interaction with the general

public.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing her

past relevant work; however, there were jobs that existed in significant numbers in the

national economy Plaintiff could perform.  (T. 23-24.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes six separate arguments in support of her motion for judgment on

the pleadings.  First, Plaintiff argues the ALJ erred in failing to give controlling weight to

treating psychiatrist Stephen Hudyncia, M.D. that Plaintiff met Listing §§ 12.04, 12.06,

and 12.08 and equaled Listing § 12.02.  (Dkt. No. 14 at 13-17 [Pl.'s Mem. of Law].)

Second, Plaintiff argues the ALJ erred in failing to give controlling weight to the RFC

opinion of Dr. Hudyncia.  (*Id.* at 17-22.)  Third, Plaintiff argues the ALJ erred in giving

only "some weight" to the opinion of consultative examiner Cheryl Loomis, Ph.D. and

"great weight" to non-examining consultant L. Hoffman, Ph.D.  (*Id.* at 22-25.)  Fourth,

Plaintiff argues the ALJ erred in his credibility determination.  (*Id.* at 25-28.)  Fifth,

Plaintiff argues the ALJ erred in relying on the vocational expert ("VE") testimony as to

jobs available to Plaintiff.  (*Id.* at 28.)  Sixth, and lastly, Plaintiff argues the ALJ erred in

failing to properly evaluate Plaintiff's obesity under SSR 00-3p and 02-19p.  (*Id.* at 29.)

## B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues

substantial evidence supported the ALJ's evaluation of the opinion evidence regarding

Plaintiff's mental limitations.  (Dkt. No. 18 at 7-16 [Def.'s Mem. of Law].)  Second,

Defendant argues the ALJ adequately considered Plaintiff's obesity.  (*Id.* at 17-18.)

Third, Defendant argues substantial evidence supported the ALJ's evaluation of

Plaintiff's subjective complaints.  (*Id.* at 18-20.)  Fourth, and lastly, Defendant argues

substantial evidence supported the ALJ's step five determination.  (*Id.* at 20-22.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo

whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.

Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs*., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order and in a consolidated manner.

## A.  The ALJ's Weighing of the Medical Opinion Evidence in the Record

As indicated by Defendant, Plaintiff essentially argues that the ALJ erred in not affording controlling weight to the findings of treating psychiatrist Dr. Hudyncia and erred in giving only some weight to the opinion of consultative examiner Cheryl Loomis, Ph.D., while giving great weight to the opinion of state agency reviewing psychologist L. Hoffman, Ph.D.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c)[1]. " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a

---

[1]    Effective March 27, 2017, 20 C.F.R. §§ 404.1513, 416.913 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

On August 4, 2014, Dr. Hudyncia completed a medical source statement. (T. 474-477.) He indicated Plaintiff began treatment in February of 2012 for depression, anxiety, and PTSD. (T. 474.) Dr. Hudyncia indicated Plaintiff's treatment consisted of individual therapy and medication management, her response to treatment was "fair," and her prognosis was "fair." (*Id.*) In terms of functioning, Dr. Hudyncia indicated Plaintiff had "mild" limitations in her ability to: understand and remember simple instruction; carry out simple instructions, and make judgments on simple work-related decisions. (T. 475.)[2] He opined Plaintiff had "moderate" limitations in her ability to: understand and remember complex instructions; carry our complex instructions; and make judgments on complex work-related decisions. (*Id.*) Dr. Hudyncia opined Plaintiff had "marked" limitations in her ability to: interact appropriately with the public; interact appropriately with supervisors; interact appropriately with co-workers; and respond appropriately to usual work situations and to changes in a routine work setting. (T. 476.)

Dr. Hudyncia also completed a form titled "Mental Impairments Questionnaire (Listings)." (T. 478-481.) Dr. Hudyncia indicated Plaintiff was diagnosed with depressive disorder, anxiety disorder, and PTSD, and assigned Plaintiff a current Global Assessment of Functioning Score ("GAF") of 57 and noted that her highest GAF in the

---

[2]     The form proved the following definitions: mild is a slight limitation, but the individual can generally function well; moderate is more than a slight limitations, but the individual is still able to function satisfactorily; marked is a serious limitation and there is a substantial loss in the ability to effectively function; and extreme is a major limitation and there is no useful ability to function.  (T. 475.)

past year was also 57.  (T. 478.)[3]  Dr. Hudyncia noted Plaintiff's treatment included individual therapy and medication including Doxepin and her prognosis was "fair."  (T. 478.)  Dr. Hudyncia found that Plaintiff had "moderate" limitations in her activities of daily living, "marked" limitations in maintaining social functioning, "marked" limitations in maintaining concentration persistence and pace, and no episode of decompensation within 12 month period each of at least two weeks duration.  (T. 480.)[4]

Dr. Hudyncia checked the box for the statement that Plaintiff had a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."  (T. 481.)  He also checked the box for the statement that Plaintiff had a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement."  (*Id.*)  He checked the box indicating Plaintiff would be absent from work more than four days per month.  (*Id.*)

The ALJ afforded Dr. Hudyncia's statements "limited weight" reasoning they were "inconsistent with the objective evidence in the record."  (T. 22.)  The ALJ stated Dr. Hudyncia's medical source statement was inconsistent with his treatment notations and the ALJ provided examples of such inconsistencies.  (*Id.*)  For example, contrary to Dr. Hudyncia's opinion that Plaintiff had marked limitations, treatment notations continuously indicated that Plaintiff had abnormal mood/affect, but was cooperative,

---

[3]	"The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 32 (4th ed.2000)).  The fifth edition of the Diagnostic and Statistical Manual of Mental Disorders removed the GAF metric.

[4]	The form defined "marked" as "more than moderate but less than extreme."  (T. 480.)

with normal speech, intact memory, a euthymic mood, clear senses, fair judgment, no delusion or hallucinations, and no suicidal or homicidal thoughts. (T. 294, 324, 326, 337, 339, 345, 347, 349, 351-353, 363, 365, 367, 372.) Dr. Hudyncia's medical source statement indicated that Plaintiff's highest GAF score in the past year was 57; however, treatment notations indicated it was 65 in February of 2014. (T. 364, 478.)

The ALJ also noted that Dr. Hudyncia indicated Plaintiff's medications caused side effects of dizziness and drowsiness; however treatment notations consistently stated that Plaintiff did not complain of side effects from medications. (T. 22, referring to T. 362, 365, 367, 478.) Plaintiff admonishes the ALJ for highlighting this inconsistency. (Dkt. No. 14 at 21 [Pl.'s Mem. of Law].) However, the ALJ properly provided a list of inconsistencies amongst Dr. Hudyncia's medical source opinion and treatment notations, side effects from medications being just one example. Further inconsistencies included Dr. Hudyncia's diagnostic notations. He indicated on his medical source statement he treated Plaintiff for anxiety, depression and PTSD; however, treatment notations only included the diagnostic code for depression ("311"). (T. 364, 366, 368.) Where a treating physician's treatment notes did not corroborate the physician's restrictive limitations, and were contradicted by other medical evidence, the Second Circuit has held that an ALJ may properly decline to accord that treating provider's opinion significant weight. *Kennedy v. Astrue*, 343 F. App'x. 719, 721 (2d Cir. 2009). Therefore, the ALJ did not err in affording Dr. Hudyncia's statement less than controlling weight due, in part, to inconsistencies between the statement and the doctor's treatment notations.

The ALJ also relied on other objective medical evidence and medical opinion evidence in the record in affording Dr. Hudyncia's opinions less than controlling weight. Plaintiff appears to take issue with the ALJ outlining the objective medical evidence in the record and then making a conclusion that such evidence does not support Dr. Hudyncia's statement. (Dkt. No. 14 at 18 [Pl.'s Mem. of Law].) However, the ALJ properly outlined the objective medical evidence (T. 17-21) and then concluded that such evidence did not support Dr. Hudyncia's statements (T. 22). As stated by Defendant, the ALJ reviewed the objective evidence, as he was required to do, and then weighed the evidence as was his task. (Dkt. No. 18 at 10 [Def.'s Mem. of Law].) It is the task of the ALJ to weigh medical evidence in the record and resolve conflicts. *See* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding plaintiff's RFC is reserved to the Commissioner); *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

The ALJ gave great weight to the opinion of Dr. Hoffman, reasoning his opinion was consistent with the overall objective evidence. (T. 22.) Dr. Hoffman reviewed the record on June 28, 2013. (T. 74.) He opined that based on "the totality of the clinical and non-clinical evidence in the file" Plaintiff was capable of performing simple tasks in a competitive work setting and may benefit from an environment where she would be precluded from intensive interaction with the public or tasks involving a high degree of stress, but was capable of routine interactions with coworkers and supervisors. (T. 78.)

Plaintiff asserts the ALJ erred in relying on Dr. Hoffman's opinion because the opinion completed by Dr. Hoffman failed to indicate what type of medical degree he had. (Dkt. No. 14 at 22 [Pl.'s Mem. of Law].) However, Dr. Hoffman's opinion included a code of "38" next to his signature. (T. 74.) The Program Operations Manual Systems ("POMS") specifically identifies code 38 for psychology. POMS DI 24501.004(B). Therefore, Plaintiff's argument, that Dr. Hoffman's medical specialty was unknown and therefore the ALJ erred on relying on his opinion, is without merit.

The ALJ afforded Dr. Loomis's opinion "some weight." (T. 21.) Dr. Loomis examined Plaintiff on June 3, 2013, and provided a medical source statement. (T. 351-354.) Dr. Loomis noted on examination that Plaintiff had restless motor behavior, appropriate eye contact, had appropriate speech, coherent and goal directed thought processes, dysphoric and anxious affect, euthymic mood, and clear sensorium. (T. 352.) Dr. Loomis observed that Plaintiff's attention and concentration were impaired "most likely due to both limited intellectual abilities as well as nervousness." (T. 353.) Dr. Loomis noted Plaintiff's memory skills were "impaired" and her cognitive functioning appeared to be below average. (*Id.*)

In a medical source statement, Dr. Loomis opined that Plaintiff exhibited "no impairment in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, and learn new tasks." (T. 353.) She opined Plaintiff had a "moderate impairment" in her ability to make appropriate decisions and a "marked impairment" in her ability to maintain attention and concentration, perform complex tasks independently or under supervision, relate adequately with others, and appropriately deal with stress. (T. 353-354.) Of note,

although Dr. Loomis indicated Plaintiff had a "marked" limitation in her ability to maintain attention and concentration, the doctor nonetheless opined Plaintiff was still capable of performing simple, routine work.

Here, the ALJ did not err in relying on the medical opinion provided by Dr. Hoffman.  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's "opinions may constitute substantial evidence in support of residual functional capacity findings."  *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* No. 15-3502, 667 F. App'x 319 (2d Cir. 2016) (the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence).

Plaintiff asserts that medical evidence in the record, primarily Plaintiff's own subjective complaints, supported Dr. Hudyncia's findings.  (Dkt. No. 14 at 20 [Pl.'s Mem.

of Law].)  However, under the substantial evidence standard of review, it is not enough

for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that

the evidence in the record could support her position.  Plaintiff must show that no

reasonable factfinder could have reached the ALJ's conclusions based on the evidence

in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013)

(Commissioner's findings must be sustained if supported by substantial evidence even if

substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949

F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's

determination considerable deference and cannot substitute own judgment even if it

might justifiably have reached a different result upon a *de novo* review).

Plaintiff also claims the ALJ incorrectly considered the nature and length of her

treatment with Dr. Hudyncia.  (Dkt. No. 14 at 21 [Pl.'s Mem. of Law].)  However, the ALJ

correctly considered the nature, extent, and frequency of Dr. Hudyncia's treatment.  *See*

20 C.F.R. § 404.1527(c)(2).  Plaintiff fails to explain how the ALJ's statement, that Dr.

Hudyncia's saw Plaintiff on a "routine, infrequent basis about once every two to three

months for medication management only" was misleading.  (T. 22.)  The ALJ's

statement was an accurate representation of Dr. Hudyncia's treatment and the ALJ

properly took into consideration the nature, extent and frequency of treatment as one

factor in his overall evaluation of the doctor's opinions.

Here, the ALJ provided good reasons for affording Dr. Hudyncia's opinions less

than controlling weight in formulating his RFC determination, and the ALJ's conclusion

was supported by substantial evidence.  In addition, the ALJ's mental RFC

determination was supported by the medical opinion of Dr. Hoffman and other objective medical evidence in the record.

Plaintiff also asserts that the ALJ erred by not giving controlling weight to Dr. Hudyncia's findings that she met or equaled various mental Listings. (Dkt. No. 14 at 13-17 [Pl.'s Mem. of Law].) At step three of the sequential process the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.926) ("the Listings"). If Plaintiff's impairments or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement, Plaintiff is disabled. *Id.* at § 404.1509. If Plaintiff does not meet or equal a Listing, the analysis proceeds to the next step.

Plaintiff contends that the ALJ erred as a matter of law because he failed to discuss the findings of Dr. Hudyncia at step three. (Dkt. No. 14 at 13-17 [Pl.'s Mem. of Law].) As stated by Defendant, Plaintiff fails to point to any authority to support her argument that the ALJ had to expressly discuss the doctor's findings at step three. (Dkt. No. 18 at 13-14 [Def.'s Mem. of Law].)

At step three, an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," and even the absence of an express rationale for an ALJ's conclusions does not prevent a court from upholding them so long as the Court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (citing *Berry v. Schweiker,* 675 F.2d 464, 469)).

Here, the ALJ determined that Plaintiff's mental impairments did not meet or equal a Listing. (T. 15-16.) The ALJ determined that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence or pace; and no episodes of decompensation. (T. 15.)[5] The ALJ also found that medical evidence did not satisfy the "C" criteria of Listing §12.04 or the "C" criteria of Listing § 12.06. (T. 16.)[6]

Although the ALJ did not specifically mention Dr. Hudyncia's opinion at step three of his decision, it is clear from the ALJ's overall analysis and decision that he reviewed Dr. Hudyncia's findings and opinions. Indeed, the ALJ outlined Dr. Hudyncia's opinion regarding the paragraph B criteria of the Listings in his step four analysis. (T.22.) The ALJ then properly applied the treating physician rule in analyzing Dr. Hudyncia's opinions and substantial evidence supported his determination to afford the opinions less than controlling weight. Further, at step three the ALJ provided reasoning to support his determination that Plaintiff's mental impairments did not meet or equal a Listing. Based on the ALJ's discussion and step three, and his subsequent analysis at

---

[5]     To satisfy the criteria of Listings 12.04 or 12.06 Plaintiff must meet the requirements of paragraph A and either paragraph B or paragraph C of the Listing. Paragraph B of each of these Listings requires that Plaintiff demonstrate that her mental impairment resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Secs. 12.04(B), 12.06(B). Listing 12.09, substance addiction disorders, relies on meeting one of the other Listings, here Listings 12.04 or 12.06. *Id.* at Sec. 12.09.

[6]     Paragraph C of Listings 12.04 requires a chronic affective disorder of at least 2 years duration, with at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living environment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.04(C). Paragraph C of Listing 12.06 requires an anxiety-related disorder "[r]esulting in complete inability to function independently outside the area of one's home." *Id.* at Sec. 12.06(C).

step four, there was sufficient rationale to support his decision to afford Dr. Hudyncia's opinions less than controlling weight and to find that Plaintiff's impairments did not meet or equal a Listed impairment.

Overall, the ALJ properly weighed the medical opinion evidence in the record, provided good reasons for affording Dr. Hudyncia's opinion less than controlling weight, and his determinations were supported by substantial evidence. The ALJ's mental RFC determination was supported by substantial evidence in the record, namely the opinion of Dr. Hoffman and other objective medical evidence as outlined by the ALJ. The ALJ did not err in his step three determination. The ALJ provided ample reasoning at step three to support his conclusion and the ALJ's discussion of Dr. Hudyncia's opinion at step four clearly indicated that the ALJ did not adopt the doctor's opinion that Plaintiff had "moderate" or "marked" limitations in the Paragraph B criteria of the Listings.

### B. The ALJ's Credibility Determination

In determining whether a plaintiff is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. " 'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.' " *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that " '[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,' " and that "[i]f there is substantial

evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.' " *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999)).

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional

limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (T. 20.) Plaintiff essentially argues that the ALJ erred in his credibly determination because he "cherry picked" the record and failed to mention Plaintiff's testimony regarding her debilitating symptoms. (Dkt. No. 14 at 26-27 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit.

Plaintiff asserts the ALJ failed to fully account for Plaintiff's testimony regarding the limiting effects of her mental impairments. For example, Plaintiff contends that the ALJ failed to mention Plaintiff stopped going to church because of her anxiety. (Dkt. No. 14 at 26 [Pl.'s Mem. of Law].) However, the ALJ stated in his summary of Plaintiff's testimony "[s]he stopped going to church." (T. 17.) Plaintiff contends that the ALJ failed to mention Plaintiff's testimony that her medication made her tired. (Dkt. No. 14 at 26 [Pl.'s Mem. of Law].) The ALJ stated in his summary of Plaintiff's testimony "[s]he was on medication which caused side-effects of fatigue and dry mouth." (T. 17.) Plaintiff contends that the ALJ failed to mention Plaintiff's testimony that she's afraid to leave her home. (Dkt. No. 14 at 26 [Pl.'s Mem. of Law].) The ALJ stated in his summary of Plaintiff's testimony "[s]he is afraid to leave her house due to anxiety and prefers to stay at home." (T. 17.) Therefore, Plaintiff argument that the ALJ cherry picked her testimony is without merit.

In making his credibility determination, the ALJ summarized Plaintiff's testimony, including her medical treatment, medications, symptoms, and activities of daily living. (T. 17.) The ALJ noted inconsistencies in Plaintiff's testimony regarding her activities and drug use. (T. 20-21.) For example, despite Plaintiff's testimony of debilitating panic attacks, records indicated she was able to take public transportation, socialize with friends, attend a concert, and go to the park. (T. 21.) The ALJ did not highlight Plaintiff's activities as demonstrative of her ability to work, but merely noted inconsistencies in her testimony which detracted from its credibility. *See Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.").

Plaintiff also appears to argue the ALJ failed to take Plaintiff's testimony into consideration in making a function by function assessment of her mental RFC determination, relying on the direction of SSR 96-8p: Assessing Residual Functional Capacity in Initial Claims. (Dkt. No. 14 at 27 [Pl.'s Mem. of Law].) Plaintiff's argument fails. The Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a *per se* error requiring remand. *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir.2013).

Plaintiff appears to argue the ALJ failed to take into consideration her non-exertional limitations based on her testimony under SSR 85-15. (Dkt. No. 14 at 27-28 [Pl.'s Mem. of Law].) Plaintiff asserts that her ability to care for her son, clean and

watch TV is "inconsequential" because it does not mean she is able to engage in substantial gainful activities.  (*Id.* at 28.)  However, as stated herein, the ALJ did not determine that Plaintiff was capable of performing work based on her testimony of activities of daily living.  As stated above, the ALJ noted inconsistencies in Plaintiff's testimony and the record.  The ALJ relied, in part, on those inconsistencies in making his determination that Plaintiff's testimony regarding the limiting effects of her impairments was not entirely credible.

Overall, the ALJ properly assessed Plaintiff's credibility and his determination was supported by substantial evidence.

### C.  Obesity

At step two the ALJ determined that Plaintiff's obesity was not itself disabling, nor did it aggravate her other impairments to the point that they would prevent her from performing the work specified in her RFC.  (T. 15.)  The ALJ stated that he considered all of the Plaintiff's impairments, severe and non-severe, in his RFC determination.  (Id.)

Plaintiff asserts the ALJ failed to properly evaluate her obesity under SSR 02-1p.  (Dkt. No. 14 at 29 [Pl.'s Mem. of Law].)  First, Plaintiff fails to cite to the record any indication that her obesity caused greater functional limitations than imposed by the ALJ's RFC.  (*Id.*)  Second, contrary to Plaintiff's assertion, the ALJ discussed obesity throughout his decision.  For example, in evaluating the medical evidence in the record regarding Plaintiff's physical capabilities, the ALJ noted consultative examiner Tanya Perkins-Mwantuali, M.D. noted obesity among Plaintiff's impairments.  (T. 19, referring to T. 359.)  Dr. Perkins-Mwantuali opined that Plaintiff had "no physical objective limitations."  (T. 359.)  The ALJ also relied on notations from Plaintiff's primary care

provider, Roger Norton, M.D.  (T. 20.)  Dr. Norton, and other providers, noted generally

normal and unremarkable physical examinations.  (T. 20, referring to T. 315, 320, 382,

428, 440, 447, 451-452, 456, 461.)  The ALJ noted that there was no significant concern

or specified treatment for Plaintiff's obesity.  (T. 21.)  Therefore, contrary to Plaintiff's

assertion, the ALJ discussed obesity throughout his decision and substantial evidence

in the record supported the ALJ's determination that Plaintiff's obesity did not, alone or

in combination with other impairments, cause additional functional limitations.

### D.  The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two

part process to first assess Plaintiff's job qualifications by considering his physical

ability, age, education, and work experience, and then determine whether jobs exist in

the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76

L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to

the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404,

Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen*,

802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if

a non-exertional limitation "has any more than a 'negligible' impact on a claimant's

ability to perform the full range of work."  *Selian v. Astrue*, 708 F.3d 409, 421 (2d

Cir.2013) (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir.2010)).  A non-exertional

impairment is non-negligible "when it ... so narrows a claimant's possible range of work

as to deprive him of a meaningful employment opportunity."  *Zabala*, 595 F.3d at 411.

Whether VE testimony is required must be determined on a "case-by-case basis."  *Bapp* 802 F.2d at 605-606.  Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]."  *Id.* at 603.

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [ ] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).

Plaintiff argues the ALJ's step five determination was not supported by substantial evidence because the hypothetical posed to the VE did not accommodate limitations beyond the assessed RFC.  (Dkt. No. 14 at 29 [Pl.'s Mem. of Law].)  However, this argument is merely repetitive of Plaintiff previous arguments and is unpersuasive since this Court has already concluded that the ALJ did not err in the weight afforded to the medical source opinions in the record.  Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is

<u>**DENIED**</u>; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is

      **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:      December 15, 2017

                                  William B. Mitchell Carter
                                  U.S. Magistrate Judge